FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Aug 14, 2023

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| MYSTICAL L.,[1] | No. 1:22-cv-03084-MKD |
| Plaintiff, | ORDER AFFIRMING DECISION OF COMMISSIONER |
| v. | **ECF Nos. 10, 11** |
| KILOLO KIJAKAZI, ACTING COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

Before the Court are the parties' briefs.  ECF Nos. 10, 11.  The Court, having reviewed the administrative record and the parties' briefing, is fully informed.  For the reasons discussed below, the Court affirms the Commissioner's decision.

---

[1] To protect the privacy of plaintiffs in social security cases, the undersigned identifies them by only their first names and the initial of their last names.  *See* LCivR 5.2(c).

ORDER - 1

**JURISDICTION**

The Court has jurisdiction over this case pursuant to 42 U.S.C. § 405(g).

**STANDARD OF REVIEW**

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012), *superseded on other grounds by* 20 C.F.R. §

ORDER - 2

404.1502(a).  Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless."  *Id*.  An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination."  *Id*. at 1115 (quotation and citation omitted).  The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed.  *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act.  First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 423(d)(1)(A).  Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria.  *See* 20 C.F.R. § 404.1520(a)(4)(i)-(v).  At step one, the Commissioner considers the claimant's

work activity.  20 C.F.R. § 404.1520(a)(4)(i).  If the claimant is engaged in

"substantial gainful activity," the Commissioner must find that the claimant is not

disabled.  20 C.F.R. § 404.1520(b).

If the claimant is not engaged in substantial gainful activity, the analysis

proceeds to step two.  At this step, the Commissioner considers the severity of the

claimant's impairment.  20 C.F.R. § 404.1520(a)(4)(ii).  If the claimant suffers

from "any impairment or combination of impairments which significantly limits

[his or her] physical or mental ability to do basic work activities," the analysis

proceeds to step three.  20 C.F.R. § 404.1520(c).  If the claimant's impairment

does not satisfy this severity threshold, however, the Commissioner must find that

the claimant is not disabled.  *Id.*

At step three, the Commissioner compares the claimant's impairment to

severe impairments recognized by the Commissioner to be so severe as to preclude

a person from engaging in substantial gainful activity.  20 C.F.R. §

404.1520(a)(4)(iii).  If the impairment is as severe or more severe than one of the

enumerated impairments, the Commissioner must find the claimant disabled and

award benefits.  20 C.F.R. § 404.1520(d).

If the severity of the claimant's impairment does not meet or exceed the

severity of the enumerated impairments, the Commissioner must pause to assess

the claimant's "residual functional capacity."  Residual functional capacity (RFC),

ORDER - 4

defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. § 404.1545(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 404.1520(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. § 404.1520(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education, and past work experience. *Id.* If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 404.1520(g)(1). If the claimant is not capable of adjusting to other work, the analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. *Id.*

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to

ORDER - 5

step five, the burden shifts to the Commissioner to establish that 1) the claimant is

capable of performing other work; and 2) such work "exists in significant numbers

in the national economy." 20 C.F.R. § 404.1560(c)(2); *Beltran v. Astrue*, 700 F.3d

386, 389 (9th Cir. 2012).

### ALJ'S FINDINGS

On August 15, 2017, Plaintiff applied for Title II disability insurance

benefits alleging a disability onset date of July 25, 2016.[2] Tr. 82, 86. The claim

was denied, and Plaintiff did not timely file a request for reconsideration. Tr. 86.

Plaintiff filed a new application for Title II benefits on October 11, 2018.[3] *Id.* An

---

[2] Plaintiff previously applied for Title II and Title XVI benefits on July 11, 2014,

with an alleged onset date of November 1, 2009; the claim was denied initially and

on reconsideration, and the denial was upheld by an ALJ on May 26, 2016. Tr. 74,

89. Plaintiff appealed the decision, and the Appeals Council declined review and

this Court denied Plaintiff's Motion for Summary Judgment. Tr. 12, 74; *Mystical*

*L. v. Andrew Saul*, No. 1:17-cv-3166-MKD (E.D. Wash. Nov. 21, 2018).

[3] The administrative record appears to be incomplete as several items typically

found in a record are not present in this case. For example, Plaintiff's applications

for benefits and this Court's prior Order are not contained in the record. However,

ALJ dismissed the case, finding *res judicata* applied.  Tr. 85-87.  The Appeals

Council remanded the case on February 27, 2021.  Tr. 88-90.  The Appeals

Council noted that on October 16, 2018, Plaintiff was found to have good cause for

the untimely reconsideration request, and thus the request for reconsideration for

the 2017 application was processed and the October 2018 application was not

processed.  Tr. 90.  Therefore, there was a period of time that was unadjudicated

and the case was remanded to adjudicate the two-month relevant period.  *Id.*

Plaintiff appeared before an administrative law judge (ALJ) on October 28, 2021.

Tr. 25-46.  On November 5, 2021, the ALJ denied Plaintiff's claim.  Tr. 8-24.

At step one of the sequential evaluation process, the ALJ found Plaintiff,

who met the insured status requirements through September 30, 2016, has not

engaged in substantial gainful activity since July 25, 2016.  Tr. 15.  At step two,

the ALJ found that Plaintiff had the following severe impairments at the date last

insured: degenerative disc disease, sacroiliitis, coccydnia, and obesity.  *Id.*

At step three, the ALJ found Plaintiff did not have an impairment or

combination of impairments that met or medically equaled the severity of a listed

_____

Plaintiff has not argued any error regarding the incomplete record, and the Court

finds it is able to make an informed decision with the current record.

ORDER - 7

impairment. Tr. 17. The ALJ then concluded that Plaintiff had the RFC to

perform light work with the following limitations:

> [Plaintiff] must be permitted to change position from sit to stand or
> stand to sit approximately every 30 minutes at the work station (such
> that approximately half of the workday is standing and half is sitting);
> can occasionally climb ramps and stairs; should not climb ladders,
> ropes or scaffolds; can occasionally stoop, kneel and crouch; should
> not crawl; and should have no more than frequent exposure to
> vibration.

*Id.*

At step four, the ALJ found Plaintiff was unable to perform any of her past

relevant work. Tr. 19. At step five, the ALJ found that, considering Plaintiff's

age, education, work experience, RFC, and testimony from the vocational expert,

there were jobs that existed in significant numbers in the national economy that

Plaintiff could perform, such as cashier, router, and assembler of small products II.

Tr. 20. Therefore, the ALJ concluded Plaintiff was not under a disability, as

defined in the Social Security Act, from the alleged onset date of July 25, 2016,

through the date last insured. Tr. 21.

On April 22, 2022, the Appeals Council denied review of the claim, Tr. 1-6,

making the ALJ's decision the Commissioner's final decision for purposes of

judicial review. *See* 42 U.S.C. § 1383(c)(3).

ORDER - 8

**ISSUES**

Plaintiff seeks judicial review of the Commissioner's final decision denying her disability insurance benefits under Title II of the Social Security Act. Plaintiff raises the following issues for review:

1.  Whether the ALJ conducted a proper step-two analysis;

2.  Whether the ALJ properly evaluated Plaintiff's symptom claims; and

3.  Whether the ALJ properly evaluated the medical opinion evidence.

ECF No. 10 at 2.

**DISCUSSION**

**A. Step Two**

Plaintiff contends the ALJ erred at step two by failing to identify her somatic symptom disorder as a severe impairment. ECF No. 10 at 4-6. At step two of the sequential process, the ALJ must determine whether the claimant suffers from a "severe" impairment, i.e., one that significantly limits her physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520(c). When a claimant alleges a severe mental impairment, the ALJ must follow a two-step "special technique" at steps two and three. 20 C.F.R. § 404.1520a. First, the ALJ must evaluate the claimant's "pertinent symptoms, signs, and laboratory findings to determine whether [he or she has] a medically determinable impairment." 20 C.F.R. § 404.1520a(b)(1). Second, the ALJ must assess and rate the "degree of

ORDER - 9

functional limitation resulting from [the claimant's] impairments" in four broad

areas of functioning: understand, remember, or apply information; interact with

others; concentrate, persist, or maintain pace; and adapt or manage oneself.  20

C.F.R. § 404.1520a(b)(2)-(c)(4).  Functional limitation is measured as "none, mild,

moderate, marked, and extreme."  20 C.F.R. § 404.1520a(c)(4).  If limitation is

found to be "none" or "mild," the impairment is generally considered not severe.

20 C.F.R. § 404.1520a(d)(1).  If the impairment is severe, the ALJ proceeds to

determine whether the impairment meets or is equivalent in severity to a listed

mental disorder.  20 C.F.R. § 404.1520a(d)(2)-(3).

Step two is "a de minimus screening device [used] to dispose of groundless

claims."  *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996).  "Thus, applying

our normal standard of review to the requirements of step two, [the Court] must

determine whether the ALJ had substantial evidence to find that the medical

evidence clearly established that [Plaintiff] did not have a medically severe

impairment or combination of impairments."  *Webb v. Barnhart*, 433 F.3d 683, 687

(9th Cir. 2005).

Plaintiff contends the ALJ erred in failing to find her somatic symptom

disorder to be a severe impairment.  ECF No. 10 at 3-6.  In 2020, Dr. Teal stated

Plaintiff had a provisional diagnosis of somatic symptom disorder.  Tr. 512.

Plaintiff concedes the provisional diagnosis was given in 2020 but contends "there

ORDER - 10

is no evidence to indicate this was a new impairment" and thus contends the

diagnosis existed during the relevant period. ECF No. 10 at 3-6. However,

Plaintiff was not diagnosed with somatic symptom disorder but rather given a

provisional diagnosis. Plaintiff does not cite to any evidence she was diagnosed

with somatic symptom disorder prior to her date last insured. Additionally, even if

Plaintiff was diagnosed with somatic symptom disorder, Plaintiff does not cite to

any evidence that indicates the disorder caused more than mild limitations during

the relevant adjudicative period. Plaintiff has not met her burden in demonstrating

the ALJ erred at step two. Plaintiff is not entitled to remand on these grounds.

**B. Plaintiff's Symptom Claims**

Plaintiff faults the ALJ for failing to rely on reasons that were clear and

convincing in discrediting her symptom claims. ECF No. 10 at 6-13. An ALJ

engages in a two-step analysis to determine whether to discount a claimant's

testimony regarding subjective symptoms. SSR 16-3p, 2016 WL 1119029, at *2.

"First, the ALJ must determine whether there is objective medical evidence of an

underlying impairment which could reasonably be expected to produce the pain or

other symptoms alleged." *Molina*, 674 F.3d at 1112 (quotation marks omitted).

"The claimant is not required to show that [the claimant's] impairment could

reasonably be expected to cause the severity of the symptom [the claimant] has

ORDER - 11

alleged; [the claimant] need only show that it could reasonably have caused some degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citations omitted). General findings are insufficient; rather, the ALJ must identify what symptom claims are being discounted and what evidence undermines these claims. *Id*. (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) (requiring the ALJ to sufficiently explain why it discounted claimant's symptom claims)). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin*., 278 F.3d 920, 924 (9th Cir. 2002)).

Factors to be considered in evaluating the intensity, persistence, and limiting effects of a claimant's symptoms include: 1) daily activities; 2) the location, duration, frequency, and intensity of pain or other symptoms; 3) factors that precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; 5) treatment, other than medication, an individual receives or has

received for relief of pain or other symptoms; 6) any measures other than treatment an individual uses or has used to relieve pain or other symptoms; and 7) any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.  SSR 16-3p, 2016 WL 1119029, at *7; 20 C.F.R. § 404.1529(c).  The ALJ is instructed to "consider all of the evidence in an individual's record," to "determine how symptoms limit ability to perform work-related activities."  SSR 16-3p, 2016 WL 1119029, at *2.

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, but that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the evidence.  Tr. 18.

*1. Res Judicata*

The ALJ gave effect to the prior ALJ determination that Plaintiff's symptoms resulted in the determined RFC.  Tr. 18.  While a previous ALJ's findings concerning a claimant's RFC are entitled to some res judicata consideration, the findings can be reconsidered by a subsequent judge upon showing of new information that was not presented to the first judge.  *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1173 (9th Cir. 2008) (citing *Chavez v. Bowen*, 844 F.2d 691,694 (9th Cir. 1988)).

ORDER - 13

The prior ALJ rendered his decision on May 26, 2016. Tr. 47-71. In the 2016 decision, the ALJ determined Plaintiff's severe impairments were degenerative disc disease, obesity, sacroiliitis, and coccydynia. Tr. 53. In the current decision, the ALJ again found Plaintiff's severe impairments were degenerative disc disease, obesity, sacroiliitis, and coccydynia. Tr. 15. The ALJ found there was no evidence of worsening in Plaintiff's symptoms between the prior decision and the July 2016 date last insured. Tr. 18. Plaintiff contends her symptoms worsened during the two-month period, and she began suffering from left hip pain, which was a new symptom. ECF No. 10 at 7-8. However, Plaintiff does not contend that she had a new severe impairment that caused the hip pain that the ALJ failed to address, and does not cite to evidence that the hip pain caused functional limitations not accounted for in the RFC. Plaintiff cites to two July 2016 visits as evidence of worsening symptoms, due to her complaints at the appointments and a new medication prescribed at an appointment. *Id.* Plaintiff was treated with osteopathic manipulation and prescribed Norco. Tr. 588-92. While Plaintiff reported the hip pain began April 2016, she did not report any limitations caused by the pain. *Id.* Plaintiff does not cite to any evidence of her reporting more severe symptoms and limitations than accounted for in the prior decision. The ALJ reasonably gave effect to the ALJ's prior determination regarding Plaintiff's symptom claims.

ORDER - 14

### 2.  Inconsistent Objective Medical Evidence

The ALJ found Plaintiff's symptom claims were inconsistent with the objective medical evidence.  Tr. 18-19.  An ALJ may not discredit a claimant's symptom testimony and deny benefits solely because the degree of the symptoms alleged is not supported by objective medical evidence.  *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991); *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989); *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005).  However, the objective medical evidence is a relevant factor, along with the medical source's information about the claimant's pain or other symptoms, in determining the severity of a claimant's symptoms and their disabling effects.  *Rollins*, 261 F.3d at 857; 20 C.F.R. § 404.1529(c)(2).

While Plaintiff alleged worsening of her symptoms during the two-month adjudicative period, the ALJ found the claim was inconsistent with the objective evidence at the date last insured.  Tr. 18.  Although Plaintiff complained of hip pain, she was treated with osteopathic manipulation and instructed to stretch and apply heat.  Tr. 591-92.  Plaintiff reported her osteopathic treatment helped with her pelvic pain but not her back pain.  Tr. 589.  She was started on Norco.  Tr. 588. There are no records documenting impaired gait, range of motion, nor any other significant limitations caused by her impairments during the relevant period.

ORDER - 15

1        Later records also support the ALJ's finding that Plaintiff's symptoms are

2    not as severe as alleged.  In February 2017, Plaintiff had "perhaps some mild

3    tenderness" in her back, Plaintiff reported using Norco "very sparingly" and she

4    was instructed to continue to use Norco only sparingly as needed for pain.  Tr. 587.

5    Plaintiff was later referred for facet blocks and other treatment, *see, e.g.,* Tr. 585,

6    but this treatment all took place more than six months after the date last insured.  In

7    June 2017, her provider noted Plaintiff "doesn't seem to have too much problem

8    with her back" and Plaintiff planned to use Tylenol for her pain.  Tr. 323.  Even

9    after the date last insured, she had a normal range of motion, and strength/tone

10   despite tenderness.  Tr. 584.  In 2020, Plaintiff reported no pain or discomfort for

11   two weeks, and she had normal range of motion and strength during occupational

12   therapy.  Tr. 575.  By 2021, she was using over the counter medication for her

13   pain, and she had full range of motion, a negative straight leg raises, and

14   tenderness/pain at the left SI joint but none along the spine.  Tr. 578-79.  In 2021,

15   Plaintiff reported osteopathic manipulation resolved her back pain.  Tr. 577.  On

16   multiple occasions, Plaintiff reported being too busy to attend appointments and

17   complete exercises.  Tr. 467, 493, 563, 568, 577.

18       On this record, the ALJ reasonably found Plaintiff's allegations were

19   inconsistent with the objective medical evidence.  This was a clear and convincing

20   reason, along with the other reasons offered, to reject Plaintiff's claims.

ORDER - 16

1    *3. Conservative Treatment*

2    The ALJ found Plaintiff's symptom claims were inconsistent with Plaintiff's

3    conservative treatment.  Tr. 18-19.  Evidence of "conservative treatment" is

4    sufficient to discount a claimant's testimony regarding the severity of an

5    impairment.  *Parra v. Astrue*, 481 F.3d 742 (9th Cir. 2007) (citing *Johnson v.*

6    *Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995) (treating ailments with an over-the-

7    counter pain medication is evidence of conservative treatment sufficient to

8    discount a claimant's testimony regarding the severity of an impairment)); *see also*

9    *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (holding that the ALJ

10   permissibly inferred that the claimant's "pain was not as all-disabling as he

11   reported in light of the fact that he did not seek an aggressive treatment program"

12   and "responded favorably to conservative treatment including physical therapy and

13   the use of anti-inflammatory medication, a transcutaneous electrical nerve

14   stimulation unit, and a lumbosacral corset").

15   During the relevant period, Plaintiff's pain was treated with osteopathic

16   manipulation and medication.  Tr. 18, 588-92.  Plaintiff contends she had nerve

17   blocks and other treatment; however, this treatment did not occur during the

18   relevant period.  Tr. 18; ECF No. 10 at 8 (citing Tr. 301).  At her appointments

19   during the relevant period, her provider did not recommend any additional

20   treatment beyond stretching and using a heat pack.  Tr. 588-92.  The ALJ

ORDER - 17

1    reasonably found Plaintiff's allegations were inconsistent with her conservative

2    treatment during the relevant period.  This was a clear and convincing reason to

3    reject Plaintiff's symptom claims.  Plaintiff is not entitled to remand on these

4    grounds.

5    **C. Medical Opinion Evidence**

6           Plaintiff contends the ALJ erred in her consideration of the opinion of

7    William Bothamley, M.D.  ECF No. 10 at 13-19.

8           As an initial matter, for claims filed on or after March 27, 2017, new

9    regulations apply that change the framework for how an ALJ must evaluate

10   medical opinion evidence.  *Revisions to Rules Regarding the Evaluation of*

11   *Medical Evidence*, 2017 WL 168819, 82 Fed. Reg. 5844-01 (Jan. 18, 2017); 20

12   C.F.R. § 404.1520c.  The new regulations provide that the ALJ will no longer

13   "give any specific evidentiary weight . . . to any medical opinion(s) . . ." *Revisions*

14   *to Rules*, 2017 WL 168819, 82 Fed. Reg. 5844, at 5867-68; *see* 20 C.F.R. §

15   404.1520c(a).  Instead, an ALJ must consider and evaluate the persuasiveness of

16   all medical opinions or prior administrative medical findings from medical sources.

17   20 C.F.R. § 404.1520c(a)-(b).  The factors for evaluating the persuasiveness of

18   medical opinions and prior administrative medical findings include supportability,

19   consistency, relationship with the claimant (including length of the treatment,

20   frequency of examinations, purpose of the treatment, extent of the treatment, and

ORDER - 18

the existence of an examination), specialization, and "other factors that tend to support or contradict a medical opinion or prior administrative medical finding" (including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements"). 20 C.F.R. § 404.1520c(c)(1)-(5).

Supportability and consistency are the most important factors, and therefore the ALJ is required to explain how both factors were considered. 20 C.F.R. § 404.1520c(b)(2). Supportability and consistency are explained in the regulations:

(1) *Supportability.* The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.

(2) *Consistency.* The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

20 C.F.R. § 404.1520c(c)(1)-(2). The ALJ may, but is not required to, explain how the other factors were considered. 20 C.F.R. § 404.1520c(b)(2). However, when two or more medical opinions or prior administrative findings "about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same," the ALJ is required to explain how "the other most

ORDER - 19

1  persuasive factors in paragraphs (c)(3) through (c)(5)" were considered.  20 C.F.R.

2  § 404.1520c(b)(3).

3       The Ninth Circuit addressed the issue of whether the changes to the

4  regulations displace the longstanding case law requiring an ALJ to provide specific

5  and legitimate reasons to reject an examining provider's opinion.  *Woods v.*

6  *Kijakazi*, 32 F.4th 785, 787 (9th Cir. 2022).  The Court held that the new

7  regulations eliminate any hierarchy of medical opinions, and the specific and

8  legitimate standard no longer applies.  *Id*.  The Court reasoned the "relationship

9  factors" remain relevant under the new regulations, and thus the ALJ can still

10 consider the length and purpose of the treatment relationship, the frequency of

11 examinations, the kinds and extent of examinations that the medical source has

12 performed or ordered from specialists, and whether the medical source has

13 examined the claimant or merely reviewed the claimant's records.  *Id.* at 792.

14 However, the ALJ is not required to make specific findings regarding the

15 relationship factors.  *Id.*  Even under the new regulations, an ALJ must provide an

16 explanation supported by substantial evidence when rejecting an examining or

17 treating doctor's opinion as unsupported or inconsistent.  *Id.*

18      On June 10, 2019, Dr. Bothamley, a treating provider, rendered an opinion

19 on Plaintiff's functioning.  Tr. 437-38.  Dr. Bothamley diagnosed Plaintiff with

20 chronic low back pain/pelvic pain, with recent pain into right leg consistent with

ORDER - 20

1   sciatica.  Tr. 437.  He opined that Plaintiff needs to lie down six to eight hours in a

2   day; working on a regular/continuous basis would cause Plaintiff's condition to

3   deteriorate; Plaintiff would miss four or more days per month if she worked full-

4   time; and her limitations have existed since April 2008.  Tr. 437-38.  The ALJ

5   found Dr. Bothamley's opinion was not persuasive.  Tr. 19.

6        First, the ALJ found Dr. Bothamley's opinion was not supported by his own

7   treatment records.  *Id.*  Supportability is one of the most important factors an ALJ

8   must consider when determining how persuasive a medical opinion is.  20 C.F.R. §

9   404.1520c(b)(2).  The more relevant objective evidence and supporting

10  explanations that support a medical opinion, the more persuasive the medical

11  opinion is.  20 C.F.R. § 404.1520c(c)(1).  The ALJ noted that Dr. Bothamley's

12  treatment records from an appointment close to the date last insured do not support

13  his opinion.  Tr. 19 (citing Tr. 299-300).  Dr. Bothamley's February 2017 record

14  says Plaintiff's back "does show perhaps some mild tenderness," and he noted

15  Plaintiff was only "very sparingly" using her pain medication.  Tr. 299-300.  In

16  2018, Dr. Bothamley noted Plaintiff had normal ambulation.  Tr. 352, 354.  In

17  2019, at the time he completed the disability questionnaire, Dr. Bothamley noted

18  there was no specific tenderness in the lumbar region.  Tr. 19 (citing Tr. 442).  The

19  ALJ reasonably found Dr. Bothamley's records to be inconsistent with his

20  disabling opinion.

ORDER - 21

Second, the ALJ found Dr. Bothamley's opinion was inconsistent with the record as a whole.  Tr. 19.  Consistency is one of the most important factors an ALJ must consider when determining how persuasive a medical opinion is.  20 C.F.R. § 404.1520c(b)(2).  The more consistent an opinion is with the evidence from other sources, the more persuasive the opinion is.  20 C.F.R. § 404.1520c(c)(2).  The ALJ found Dr. Bothamley's disabling opinion was inconsistent with Plaintiff's normal lumbar and pelvis x-rays.  Tr. 19 (citing Tr. 348, 350).  As discussed *supra,* examinations in 2016 and 2017 also documented only mild spinal tenderness, and normal range of motion, strength, and ambulation. Tr. 19.  The ALJ reasonably found Dr. Bothamley's opinion was inconsistent with the record as a whole.  Plaintiff is not entitled to remand on these grounds.

## CONCLUSION

Having reviewed the record and the ALJ's findings, the Court concludes the ALJ's decision is supported by substantial evidence and free of harmful legal error. Accordingly, **IT IS HEREBY ORDERED**:

1. Plaintiff's Opening Brief, **ECF No. 10**, is **DENIED**.

2. Defendant's Brief, **ECF No. 11**, is **GRANTED**.

3. The Clerk's Office shall enter **JUDGMENT** in favor of Defendant.

1    The District Court Executive is directed to file this Order, provide copies to

2 counsel, and **CLOSE THE FILE**.

3    DATED August 14, 2023.

4                            *s/Mary K. Dimke*
                          MARY K. DIMKE
5                   UNITED STATES DISTRICT JUDGE

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

ORDER - 23